IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01619-PAB-CBS

STEVEN BROCKERMAN, on behalf of himself and all others similarly situated,

        Plaintiff,

v.

COLLEGE ASSIST and
NELNET, INC.,

        Defendants.

---

## ORDER

---

This matter is before the Court on defendant College Assist's Motion to Dismiss Plaintiff's Amended Complaint Under Federal Rule of Civil Procedure 12(b)(1) [Docket No. 22]. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This case arises out of defendants' alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. Plaintiff alleges that, beginning in or around July 2015, defendants used an "automatic telephone dialing system" to call him daily to collect the debt allegedly owed by him. Docket No. 18 at 5, ¶ 15. Plaintiff alleges that defendants never received plaintiff's prior express consent to receive phone calls from an automatic telephone dialing system or an artificial

---

[1] The following facts are drawn from plaintiff's Amended Complaint, Docket No. 18, and are assumed to be true for purposes of the present motion. *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

prerecorded voice on his cell phone and that he revoked any consent defendants may have believed he had given. *Id.* at 5-6, ¶¶ 19-20.

On July 29, 2015 plaintiff filed his complaint on behalf of himself and a class of others similarly situated, alleging two claims for relief pursuant to the TCPA. Docket No. 1 at 6-7, ¶¶ 25-32. On December 14, 2015, plaintiff filed an amended complaint, alleging the same two claims for relief as the original complaint and adding allegations that College Assist and Nelnet are not government entities. *See* Docket No. 18 at 2-4, ¶¶ 6-11; 10-11 ¶¶ 35-42.

On December 21, 2015, College Assist filed the instant motion to dismiss plaintiff's amended complaint, in which it argues that the Court lacks subject matter jurisdiction over plaintiff's claims against College Assist because College Assist is an arm of the state entitled to sovereign immunity under the Eleventh Amendment. Docket No. 22 at 5.

## II.  STANDARD OF REVIEW

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over the claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When resolving a

2

facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  To the extent the defendant attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir. 1997).  "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id*.  A "defendant asserting Eleventh Amendment immunity bears the burden of proof on that issue." *Sanders ex rel. Rayl v. Kansas Dep't of Social and Rehabilitation Servs.*, 317 F. Supp. 2d 1233, 1241 (D. Kan. 2004) (citing *Holt ex rel. Holt v. Wesley Medical Center, LLC*, 2002 WL 1067677 (D. Kan. Mar. 27, 2002)).

## III.  ANALYSIS

The State of Colorado and its entities are protected by Eleventh Amendment immunity.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-68 (10th Cir. 2013).  Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000).  The Eleventh Amendment applies to all suits against the state and its agencies, regardless of the relief sought.  *See Higganbotham v. Okla. Transp. Comm'n*, 328 F.3d 638, 644 (10th Cir. 2003).  "It is well-established that absent an unmistakable waiver by

the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994), *overruled on other grounds by Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998). The State of Colorado has not waived its Eleventh Amendment immunity, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and there is no indication that congressional enactment of the TCPA abrogated Colorado's Eleventh Amendment immunity.

"Sovereign immunity under the Eleventh Amendment extends to states and to state entities; it does not extend 'to counties, municipalities, or other local government entities." *BPS v. Bd. of Trustees for Colorado Sch. for the Deaf and Blind*, No. 12-cv-02664-RM-KLM, 2013 WL 5382112, at *4 (D. Colo. Aug. 21, 2013) (quoting *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007)). "If a state entity is more like a political subdivision – such as a county or city – than it is" an arm of the state, "that entity is not entitled to Eleventh Amendment immunity." *Id.* (citing *Mount Healthy City Sch., Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

Courts consider five factors to determine whether an entity is an arm of the state and therefore entitled to Eleventh Amendment immunity from suit. "The most important factor in determining whether a governmental entity is entitled to Eleventh Amendment immunity is whether a judgment against it would be paid from the state treasury." *Sonnenfeld v. City & Cty. of Denver*, 100 F.3d 744, 749 (10th Cir. 1996) (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994)). The four remaining factors

4

are (1) "the characterization of the entity under state law;" (2) "the guidance and control exercised by the state"; (3) "the degree of state funding;" and (4) "the entity's ability to provide for its own financing by levying taxes and issuing bonds."  *Sonnenfeld*, 100 F.3d at 749 (citing *Haldeman v. Wyoming Farm Loan Bd.*, 32 F.3d 469, 473 (10th Cir. 1994)).

### A. Whether Judgment Against College Assist Would be Paid by Colorado

College Assist asserts that "Colorado's Treasury would be legally liable for any money judgment awarded against College Assist in this case."  Docket No. 22 at 6.  In support, College Assist states that Colorado maintains a risk-management fund that covers "claims against the state, its officials, or its employees arising under federal law, which the state is legally obligated to pay" and has issued College Assist a certificate of insurance "showing that College Assist is covered by the risk management fund."  *Id*. The certificate of insurance lists College Assist as the insured.  Docket No. 22-2 at 2.[2]

Plaintiff does not dispute this evidence, but instead argues that the certificate of insurance is irrelevant because "plaintiff has every reason to believe that" Nelnet is obligated to indemnify College Assist, and therefore "there is no risk that the State has any risk of liability."  Docket No. 31 at 8-9.  Plaintiff's argument is misplaced.  "[I]t is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant" to

---

[2]Defendant College Assist's motion cites evidence outside the pleadings.  *See* Docket No. 22 at 4, n.1.  However, neither side asks that the motion be converted to one for summary judgment.  *Id*.; Docket No. 31 at 6, n.5.  The Court will consider evidence to resolve the disputed jurisdictional facts without converting College Assist's motion to dismiss to a summary judgment motion.  *See SK Finance SA*, 126 F.3d at 1275.

determining whether an entity is entitled to Eleventh Amendment immunity. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430-31 (1997) ("The Eleventh Amendment protects the State from the risk of adverse judgments even though the state may be indemnified by a third party."). Any potential obligation of Nelnet to indemnify College Assist is thus irrelevant to the determination of whether the state is legally obligated to pay claims against College Assist.

Plaintiff argues that, under *Sturdevant v. Paulsen*, 218 F.3d 1160 (10th Cir. 2000), College Assist has failed to establish that the State of Colorado would be liable for a judgment against College Assist. Docket No. 31 at 10. In *Sturdevant*, the defendant asserting Eleventh Amendment immunity argued that "damages against it would be paid out of the state risk management fund" pursuant to the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-30-1510(3)(a). *Id*. at 1165. Plaintiff there contended that "her claims are not federal claims and therefore not explicitly covered by Colo. Rev. Stat. § 24-30-1510(3)" and "insofar as the risk management statute incorporates the Colorado Governmental Immunity Act, that statute covers only state law tort and not state law contract claims, and therefore a judgment in her favor would not implicate the risk management fund." *Id*. The Tenth Circuit declined to "resolve conclusively the questions of operation of the risk management fund and the state's legal liability for a potential judgment" because the other arm-of-the-state factors "decisively resolve[d] the question in favor of Eleventh Amendment immunity." *Id*. at 1166-67. The Tenth Circuit noted that "it is not at all clear that even if a risk management fund must pay a judgment, this obligation renders that judgment a

6

judgment against the state for Eleventh Amendment purposes." *Id*. at 1165.  The court

held that "[t]he key question is whether funds to satisfy a money judgment would come

directly from the state, or indirectly through commingled state and local funds *or state*

*indemnification provisions*." *Id*. (emphasis in original) (quoting *Sutton v. Utah State*

*Sch. for the Deaf & Blind*, 173 F.3d 1226, 1233 (10th Cir. 1999)).

Like *Sturdevant*, College Assist's theory that Colorado will be liable for a

judgment against it is based on its ability to seek indemnification from the risk

management fund.  The Court agrees with plaintiff that, under *Sturdevant*, College

Assist has not established that the risk management fund's obligation to pay a

judgment renders it a judgment against the state for Eleventh Amendment purposes.

However, the Court finds that the other arm-of-the-state factors weigh in favor of

College Assist's Eleventh Amendment immunity from plaintiff's suit.

## B.  <u>Character Ascribed to College Assist Under Colorado Law</u>

To assess "the character ascribed to the entity under state law," the Court

conducts a "formalistic survey of state law to ascertain whether the entity is identified as

an agency of the state." *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant v. Paulsen*, 218

F.3d 1160, 1164, 1166 (10th Cir. 2000)).

College Assist argues that it is explicitly designated by statute "as the 'sole state

agency' responsible for administering the [Federal Family Education Loan Program] for

Colorado residents."  Docket No. 22 at 6.  In support of this assertion, College Assist

cites Colo. Rev. Stat. § 23-3.1-110, which is titled "Designation as sole state agency."

That section provides, in part: "The division is the agency authorized to enter into

contracts concerning the programs established by Title IV, Part B of the federal 'Higher Education Act of 1965', 20 U.S.C. 1071, as amended."  The cited statute makes no explicit mention of College Assist.  Presumably, College Assist is the "division" referenced in Colo Rev. Stat. § 23-3.1-110.  Colo Rev. Stat. § 23-3.1-102 defines "division" as "the student loan division in which the department shall constitute the successor division for all obligations incurred by the loan guarantee division formerly established by this part 1."  Plaintiff appears to agree that College Assist is the "division" referred to in this statutory scheme.  *See* Docket No. 31 at 11 (arguing that College Assist is an enterprise and citing Colo. Rev. Stat. § 23-3.1-103.5(1)(a), which provides that the "division shall constitute an enterprise").[3]  For purposes of resolving the instant motion, the Court accepts the parties' representations that College Assist is the "division" referenced in Colo Rev. Stat. § 23-3.1-102.

In light of Colorado's characterization of College Assist as a "state agency" pursuant to Colo. Rev. Stat. § 23-3.1-110, the Court finds this factor weighs in favor of finding College Assist an arm of the state.[4]  *See Steadfast*, 507 F.3d at 1253.

---

[3]Plaintiff contends that, under Colorado law, College Assist "is also classified as an Enterprise (i.e. a government owned business)" and that this weighs against finding that College Assist is an arm of the state.  Docket No. 31 at 11.  Plaintiff cites no authority for this contention, and the Court finds unpersuasive plaintiff's argument that College Assist's dual status as a state enterprise and state agency should weigh against arm-of-the-state status.

[4]College Assist argues that "the Tenth Circuit and this Court have likewise referred to College Assist as a state agency."  Docket No. 22 at 7.  College Assist cites *Karara v. United States*, 1999 WL 190748 (10th Cir. Apr. 5, 1999) (unpublished), *Allen v. Nelnet, Inc.*, No. 06-cv-00586-REB-PAC, 2007 WL 2786432 (D. Colo. Sept. 24, 2007), and *United States ex rel. Gibson v. Colorado Student Loan Program*, No. 95 N 231, 1996 WL 944285 (D. Colo. May 3, 1996).  None of these cases explicitly refers to College Assist.

### C. **College Assist's Autonomy under Colorado Law**

The Court next assesses "the autonomy accorded the entity under state law," which "hinges upon the degree of control the state exercises over the entity." *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1162, 1164, 1166).

College Assist submits that the State of Colorado (1) oversees College Assist, (2) scrutinizes its business and financial dealings, (3) regulates its relationships with its employees, and (4) represents College Assist in litigation.  Docket No. 22 at 8.  College Assist provides several examples of how Colorado controls College Assist.  Specifically, College Assist contends: (1) "College Assist is a division within and is overseen by the Colorado Department of Higher Education, specifically, its executive director, Lieutenant Governor Joseph Garcia"; (2) "College Assist's rules and regulations must be reviewed by both the Attorney General and the Office of Legislative Legal Services"; (3) the "State Controller must approve College Assist's contracts"; (4) College Assist must submit quarterly reports to the State Controller"; (5) "[a]t least once a year, College Assist must submit a report to the State Department of Revenue"; (6) "College Assist's hiring decisions must be approved by the Colorado Commission on Higher Education"; and (7) "College Assist is entitled to representation by the Colorado Attorney General."  Docket No. 35 at 6.

Plaintiff does not dispute any of these contentions.  Rather, plaintiff argues that College Assist is controlled by Nelnet more than by the state, and that the State of Colorado's control over College Assist is minimal.  Docket No. 31 at 12-13.  Plaintiff provides no authority to support his argument that Nelnet's relationship with College Assist bears on the degree of control the state has over College Assist.  Moreover,

plaintiff's arguments are inconsistent.  Plaintiff also claims that "College Assist exerts control and guidance over Nelnet in the execution of its duties as a loan aggregator." Docket No. 31 at 13.  If College Assist controls Nelnet, it is unclear how Nelnet could undermine the degree of control the State of Colorado exercised over College Assist.

The Court finds that the examples cited by College Assist regarding the State of Colorado's regulation and supervision of College Assist's activities establishes that the state exercises a significant degree of control over College Assist.  *See Steadfast*, 507 F.3d at 1254-55 (finding state auditing and reporting requirements supported a finding that the state exercised control over entity); *United States ex rel. Ruotsinoja v. Bd. of Governors of the Colorado State Univ. Sys.,* 43 F. Supp. 3d 1190, 1194 (D. Colo. 2014) (holding that the Colorado Commission of Higher Education's oversight of the Board of Governors of Colorado State University, and the Board's right to representation by the Colorado Attorney General supported finding that the state of Colorado exercised "a substantial amount of state control over CSU and its Board").

The Court finds that this factor weighs in favor of finding that College Assist is an arm of the state.

**D.  College Assist's Finances**

The Court looks to the entity's finances to determine "the amount of state funding the entity receives" and "whether the entity has the ability to issue bonds or levy taxes on its own behalf."  *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1162, 1164, 1166).

College Assist submits that Colorado law, specifically, Colo. Rev. Stat. § 23-3.1-107, "characterizes College Assist's money as state funds appropriated to College Assist by the General Assembly" and that its "accounts exist in a fund within Colorado's Treasury."[5]  Docket No. 22 at 10-11.  College Assist argues that these facts are analogous to those in *Sturdevant*, which led the Tenth Circuit to conclude that the Colorado State Board for Community Colleges was an arm of the state.  Docket No. 22 at 11; Docket No. 35 at 8.  The Court agrees that the presence of College Assist's funds within the state treasury supports College Assist's arm-of-the-state status.

College Assist asserts that it has no power to levy taxes and, although it "may issue revenue bonds, it may do so only with the approval of both the General Assembly and the Governor."  Docket No. 22 at 11.  The Court finds that College Assist's inability to levy taxes and the General Assembly's control over College Assist's ability to issue bonds weigh in favor of arm-of-the-state status.  *See Sturdevant*, 218 F.3d 1170 ("the absence of taxing authority and the degree to which Colorado law provides that the Board's issuance of bonds and setting of fees are to be carried out in accordance with legislative appropriations . . . ultimately tip the balance more towards a finding of arm-of-the-state status").

The Court finds that College Assist's finances weigh in favor of finding arm-of-the-state status.

---

[5] Colo. Rev. Stat. § 23-3.1-107 creates "in the state treasury a fund to be known as the student loan guarantee fund" which contains a "reserve account for guaranteed student loans that is established to fulfill the functions of the federal student loan reserve fund established by . . . the federal 'Higher Education Act of 1965'" and an "operating account that is established to fulfill the functions of the agency operating fund established by . . . the federal "Higher Education Act of 1965.'"

E. **Whether College Assist is Primarily Concerned with State or Local Affairs**

Last, the Court considers "whether the entity in question is concerned primarily with local or state affairs" and examines "the agency's function, composition, and purpose." *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1166, 1168-69).

Plaintiff argues that College Assist's stated goal is to assist with student loans, which is both a state and local affair. Docket No. 31 at 14. College Assist submits that it was created by the Colorado General Assembly "to benefit the residents of this state" and that its purpose "is to help Colorado 'residents in meeting the expenses incurred in availing themselves of such opportunities.'" Docket No. 22 at 11; *see* Colo. Rev. Stat. § 23-3.1-101. The statutory scheme creating College Assist and authorizing its activities makes no local distinctions; its services are provided on a statewide basis. *See id*. College Assist's primary concern is thus state, not local, affairs. This weighs in favor of arm-of-the-state status.

The arm-of-the-state factors weigh decisively in favor of finding that College Assist is an arm of the state. Accordingly, the Court finds that College Assist is entitled to immunity under the Eleventh Amendment.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that College Assist's Motion to Dismiss Plaintiff's Amended Complaint Under Federal Rule of Civil Procedure 12(b)(1) [Docket No. 22] is **GRANTED**. It is further

**ORDERED** defendant College Assist is **DISMISSED** without prejudice from this action.

DATED September 16, 2016.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge